My name is Joseph Piasun, and I represent the plaintiff and appellant in this matter, Mr. Payano. I represent the plaintiff and appellant in this matter, Mr. Georges Payano. When a time charter exercises its right to direct a vessel's movement negligently, it is committed negligence as the owner of the vessel. That's a quote from a panel of this court in Randall v. Chevron, back from 1994. In this case, the issue that's on appeal are the multiple issues of fact that exist regarding the nature and extent of ES&H's operational and navigational control of the vessel that Mr. Payano was on at the time of his injury, particularly with regard to its dual capacity role as both the employer and the vessel owner in its role as time charter under 905B. As this court is aware, this case arises out of a time charter agreement that apparently existed between ES&H and NOLA Boat Rentals. Now, I say apparently existed because here we are after two years of litigation in the district court. We still do not have a copy of the written agreement that supposedly exists setting forth the terms and conditions of the time charter agreement. What we have is a time charter agreement that existed between ES&H and what they refer to themselves as an affiliated entity. But we really do not have, and it's not contained in the record, any actual written time charter agreement. But what we do know is that there are two aspects of whatever agreement existed that are important for this court's consideration. What we know is that ES&H contracted with NOLA Boat Rentals to take its employees from Venice Marina out to a job site in Breton Sound. Now, during that transit time, there is really no question that the so-called traditional role of vessel owner and operator and time charter, that being ES&H, existed. The captain, Captain Troth, clearly determined the routes, clearly operated the vessel at his discretion, presumably determined the speed, so on and so forth. And the ES&H employees were along for the proverbial ride. They were passengers in the boat during the transit time. But Captain Troth was not one of those employees. Definitely not. He is the owner and operator of NOLA Boat Rentals, the owner of the vessel, the Saint. On site, things significantly changed vis-à-vis the parties' relationships. On site, total control, both operational and navigational, of the vessel and all of the employees rested with the ES&H supervisor, Mr. Jack Scruggs. On site, Mr. Scruggs located this being approximately a 50-foot flat-bottomed and flat-deck vessel with the wheelhouse located in the rear of the vessel and a flat workspace located towards the vessel bow. As best as we can tell, all of the ES&H employees, including Mr. Payano and including Mr. Scruggs, were located at the front of the vessel, the bow, doing their work. Their work, of course, was the repositioning, removal, and placement of various types of oil containment boom. In order for the work crew to do their work, required the movement of the vessel, both to position and deploy the boom and to reposition and remove the containment boom. The movement of the vessel was done mechanically by Captain Troth back in the wheelhouse, but the control over his activities was done exclusively by and orders given by exclusively Mr. Scruggs. The ES&H supervisor. That is essential in the nature of the work that they were doing. Captain Troth, being located quite literally 30 feet away from the work crew, couldn't move the boat, couldn't put it in reverse, couldn't operate the wheel, couldn't operate the throttle without Mr. Scruggs, who's up there watching the employees do it, giving him the instructions of what to do. Clearly, the operational and navigational control of that vessel on site was by and through Mr. Scruggs. And that's important, because if we do look to the only contract that exists, which was a time charter agreement that existed between ES&H and what they refer to themselves as an affiliated entity, Deep Delta Boat Rentals, what does state in that contract is, on site, all of the operational activities shall be directed by the on site ES&H manager, that being Mr. Scruggs in this case. There's nothing else in there other than that. If we were to rely on that as a presumed agreement, that clause could only be reasonably construed as giving the ES&H supervisor on site, and again, on site is a word in the time charter agreement, on site supervision and control over the vessel activities. So what do you do with Captain Troth's statement that, quote, at all times, I captained, operated, and maintained sole control over the Saint? As the individual and vessel captain located in the wheelhouse, as a matter of common sense, of course he has the operational control of the vessel. But what he does, how he does it, where the boat is moved, where the boat is positioned, where it's turned, the force and speed that the throttle needs to go in order to get away and retrieve the containment boom, is given pursuant to an order issued by Jack Scruggs. That was confirmed by the deposition testimony submitted as an attachment to the summary judgment pleadings and in the record of both Mr. Piana and another employee on the vessel, Mr. Furman. They both testified, and it has to be accepted as true for purposes of the summary judgment that we are considering, that those orders were issued and given by Mr. Scruggs to Captain Trott. It becomes critically important here beyond the issue of control when we look to ES&H's duties and obligations as a time charter dealing with sea conditions. It was reported by both Mr. Piana and Mr. Furman that the sea conditions were rough, that the wave activity was high, and that the rough sea conditions and that the high wave activity that they faced, while they were quite literally on their hands and knees at the vessel bow attempting to retrieve this containment boom, is what ultimately caused the injury that we're here for today. Mr. Piana's right bicep was quite literally torn from his shoulder as he attempted to heave the containment boom, but during the wave action is what caused him to become injured. It is that event, it is those conditions that ES&H placed the vessel and the crew in, which was the cause of the casualty that we're here for today. And if we look at the survey of case law within the circuit that deals with a time charter's duties and obligations, placing a vessel in heavy sea conditions, in dangerous sea conditions, has long been recognized as one of the duties that a time charter can breach and can be found negligent in its dual capacity role as both an individual's employer and as the time charter of a vessel, as in this case. Now, to the extent that Captain Troth and even Mr. Scruggs may disagree regarding what the sea conditions were, again, that is another material issue of fact that I have provided not one, but two witnesses sworn testimony that the wave action, the sea conditions, were quote, unquote, rough, and that the rough sea conditions caused the casualty that we're here for today. So, this being consideration of a summary judgment by the district court, this court, of course, looks at this case de novo. I think that the district court, in its opinion, with all due respect, paid short shrift to the actual control activities that were going on, didn't address the wave action, didn't address the sea conditions that were a cause of this casualty. And I think that when the court looks at the cases within this circuit that have addressed a time charter as duties and obligations when facing heavy sea conditions, such as were reported here, that does create, at a minimum, a question of fact as to whether that vessel should have remained on site, out in Breton Sound, in the open sea, facing those conditions, or whether the job should have been stopped and that vessel taken back to port. And had it done so, there are five minutes left. I think I've addressed every question, I mean, every issue. If the panel has any other questions, I'm happy to answer them. You've saved time for rebuttal. Thank you, Mr. McMaster. Thank you, Judge. Good afternoon, Your Honors. May it please the Court, Matthew Moeller, on behalf of Environmental Services, Inc. Just a matter of housekeeping, Your Honor. The argument that there was a breach of ES&H's duty as a time charter, I believe, was raised for the first time in the reply brief. In the original brief, Mr. Payano argued that ES&H breached CINDIA duties. I think it's clear that the CINDIA duties do not apply in this case because ES&H did not own the vessel. NOLA, at all times, controlled the vessel, and Mr. Payano even affirms as much, multiple times in his pleadings. Specifically in his second amended complaint and his motions to continue the trial, which are at pages 134 and 161, respectively, where he says, at all times, the vessel was owned, operated, and controlled by NOLA and or Brent Trouth. ES&H executed a master services agreement, which basically is the time charter agreement in this case. It's at pages 1948 through 1964, where Deep Delta Airboats provided through its affiliated entity, NOLA, vessel services to ES&H. Each specific job or charter was reflected by a work authorization form. The example of the work authorization form at issue at this case is at record page 914, which provided the basics in terms of the days of the job and the material and services to be provided, specifically the equipment and personnel needed. The work authorization form for the day in question demonstrates that DDA through NOLA was to provide vessel services in connection with an oil spill cleanup job at Bretton Sound 32. DDA through NOLA was to provide a vessel, a truck, and a vessel operator, all of which leads us to the undisputed conclusion that ES&H is the time charter of the vessel. In this circuit, it is well established under Kerr-McGee v. Maju that the time charter cannot be held liable for negligence under 905B unless the cause of harm is specifically within the traditional sphere of the charter's control, unless, and this is important, the charter has assumed greater control by the clear language of the charter agreement. Kerr-McGee at page 1341 further explains that the time charter's traditional responsibilities include the designation of cargo and where the vessel will travel. Specifically, the charter can be held liable for sending the vessel into treacherous weather, selecting a dangerous combination of cargo, or initiating loading and unloading operations in dangerous circumstances. Kerr-McGee also emphasizes that the language that expands the charter's responsibility must be clear and express to prove that the charter took on greater responsibility than it would have under the existing form that Mr. Payano relies on, says ES&H personnel on site, and I think that's important, on site shall instruct subcontractor personnel about their specific duties and responsibilities. This makes perfect sense. The subcontractor, NOLA and or DDA in this case, is working for ES&H at the site. Of course ES&H is going to provide some instructions, but not to the traditional spheres of control of the charter. We know from Payano's own affidavit at pages 1109 to 1110 in Trout's testimony at 1040 that Scruggs did instruct Trout on site, but the instructions were limited to three hand signals, move forward, move back, stay still. Similarly, the master services agreement does not contain any express language indicating that ES&H intended to be bound by any duties of the traditional spheres of control of the charter. Section 2.20 on page 1950 provides that the work is the services provided by DDA through NOLA, the vessel services. Section 7.1 on 1952 provides contractor, in this case DDA through NOLA, shall control performance of the details of the work which may be supplemented by instructions from the company's representative. The instructions that Scruggs gave Trout were merely supplemental to the primary work of DDA providing vessel services through NOLA. Now, in this case, we do have a dual capacity situation. We have ES&H acting as the employer and as the time charter, and Fifth Circuit precedent is just as clear on the duties of the time charter in this situation. The time charter retains its tort immunity for actions taken in its capacity as employer, and while not completely factually analogous, the Levine case in this circuit is a great example of this court drawing a clear distinction between acts of owner negligence and or time charter negligence and acts of employer negligence when an entity acts in a dual capacity. In Levine, the court found that the allegations against the owner-employer for failing to illuminate and or create a clear path for the plaintiff to work were acts of employer negligence. And I think it's important to talk about the allegations in this case because it's consistent with Mr. Payano's own testimony at page 265 that he's unsure about what caused this injury, and when you look at the allegations, you've got failing to properly operate a vessel, owner negligence, failing to properly train or supervise, employer negligence, failing to warn Payano of the vessel of its movement, owner negligence, failing to maintain a proper lookout, owner or employer negligence, failing to maintain the vessel and its appurtenances, owner negligence, failing to do what they should have done to prevent the incident, employer negligence as to instructions, owner negligence as to operation, failing to provide a seaworthy vessel, not applicable under 905B, failing to provide adequate and safe gear, equipment, and appurtenances of the vessel, owner negligence, failing to comply with applicable rules, regulations promulgated by OSHA, the U.S. Coast Guard, and or government or quasi-government agencies, employer negligence, failing to provide Payano with a safe place to work, employer negligence, failing to provide Payano with reasonable working conditions, employer negligence, failing to do what they should have done. I guess that could be owner or employer negligence. The point is, there's not one allegation of a breach of a time charter duty that would give rise to negligence in ES&H's capacity as time charter. Your Honors, the purpose of the Longshore Harbor Workers' Compensation Act was to provide a no-fault scheme to compensate longshoremen for accidental on-the-job injuries. That's exactly what happened in this case. Any dispute in this case is for the administrative law judge or the benefits review board. And when you view this case through the prism of Rule 56, there simply is no issue for trial regarding any negligence of ES&H in its capacity as time charter. Therefore, the lower court's decision should be affirmed. Thank you. All right, thank you, Mr. Mueller. Mr. Yelchin? I'll deal with the allegation aspect of counsel's argument. I mean, it's fairly disingenuous to hold any litigant to allegations raised in the preliminary pleadings before any discovery is conducted. And in fact, in this case, there was piecemeal discovery conducted by ES&H even after its not one, but second summary judgment was filed. They still produced over 500 pages of additional responsive documents. As in any case, the case evolves. You understand the nature and duties and relationships of the different parties. All of the issues were thoroughly briefed in this case. Mr. Payano's claim is brought under 905B. That's what was pleaded. It's in the complaint. It's what was argued at the district court and it was briefed before this court. Any nuances of ES&H's role as a time charterer were distilled during the progress of this case. ES&H itself had to withdraw a summary judgment that it filed based on an allegation of status. This case was fluid through discovery, through allegations, through claims that were brought and withdrawn. ES&H bears equal fault if there's any fault to be cast as to what was alleged in any preliminary pleadings, but the case has a relationship once the vessel was on site. The contract itself, as was cited to the court by both me and counsel, provides that on site ES&H was to assume certain control duties and obligations over the vessel. Those control duties and obligations over the vessel  to be determined by the district court and by ES&H. It is those factual disputes that must not be decided at summary judgment but can only be decided at trial. That is what is called for in this case. That needs to be decided by the district court. For that reason, I submit that the entry of summary judgment was inappropriate and should be reversed and this case should be remanded back to the district court. Thank you very much.